UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DOROTHY A. TWO BULLS, FRANCIS TWO BULLS, OGLALA SIOUX TRIBE,<br><br>Defendants. | 5:17-CV-05050-JLV<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This is a foreclosure action brought by the United States ("government") regarding a note and mortgage issued in connection with Indian trust land. Defendants Dorothy and Francis Two Bulls were the borrowers and the trust land was within the exterior boundaries of the defendant Oglala Sioux Tribe's ("OST") Pine Ridge Indian Reservation. Although the OST filed answers in response to the government's complaint and amended complaint (Docket Nos. 10 & 22), the borrowers have never filed an answer or otherwise made any appearance. The government now moves for entry of a default judgment and a decree of sale. See Docket No. 28. The OST opposes the motion. See Docket No. 35. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of the Honorable Jeffrey L. Viken, Chief United States District Judge. See Docket No. 43.

## FACTS[1]

Borrowers are American Indians who were residents of the OST's Pine Ridge Indian Reservation in South Dakota. The OST is a federally recognized Tribe under the Indian Reorganization Act, 25 U.S.C. § 479a-1.

The OST leased land with the following legal description to Borrowers for a 25-year term beginning December 10, 1999, for the purpose of constructing or maintaining a dwelling for residential purposes:

> Lot 17, Block 30, located within the SW¼ SE¼ NE¼ SW¼, SE¼ SW¼ NE¼ SW¼, W½ NESESW¼, E¼ SW¼ SE¼ SW¼, Section 7, Township 35 North, Range 44 West, 6th prime meridian, South Dakota.

See Docket No. 20-5 (lease).[2]

Borrowers executed a promissory note in the principal amount of $70,245 on December 16, 1999, in favor of Norwest Mortgage, Inc. ("Norwest"). See Docket No. 20-1. They also executed a mortgage in security for the note on the same date in favor of Norwest. See Docket No. 20-2.

The mortgage contained a "Section 184" rider. Id. at pp. 7-8. The rider recited that the OST had created a lease agreement with borrowers for the subject property on December 10, 1999. Id. at p. 8. The rider stated if the mortgage were assigned to the Secretary of Housing and Urban Development ("HUD"), forclosure proceedings may be had in federal district court. Id. In

---

[1] The recitation of facts is taken from the government's verified complaint, which facts are not disputed by the OST.

[2] But see discussion at section D of the Discussion section of this opinion. The legal description of the property in the mortgage is different.

such proceedings, Section 184 granted to the court jurisdiction to convey to HUD the remaining life of the lease on the property and to evict the delinquent borrowers. Id. Any purchaser of the property at a foreclosure sale other than HUD would be required to obtain OST's written consent. Id.

The Bureau of Indian Affairs ("BIA") approved the mortgage on February 11, 2000. See Docket No. 20-3. Thereafter, the mortgage was duly recorded.

The land encumbered by the above-described mortgage and lease is owned by the government in trust for the OST. See Docket No. 20-4. Borrowers are in default on the terms of the note and mortgage because they have failed to make the timely monthly payments required by those instruments. Wells Fargo Home Mortgage[3] gave notice to borrowers of their default on January 7, 2008, indicating that the bank would accelerate the note if the delinquency in payments was not remedied by February 6, 2008. See Docket No. 20-8.

Under the terms of the note, if the borrowers default, the holder of the note may accelerate the debt (i.e. make future payments under the note due and owing immediately). See Docket No. 20-1, ¶6. The mortgage similarly allows acceleration and foreclosure in the event of default by the borrowers in making timely monthly payments. See Docket No. 20-2, ¶22.

Borrowers did not remedy the delinquency. Thereafter, on April 3, 2008, Wells Fargo notified OST that it was being given the opportunity to exercise its

---

[3] Norwest merged with Wells Fargo and now both entities are known as Wells Fargo.

right of first refusal with regard to the borrowers' interest in the property.  See Docket No. 20-9.  In order to exercise its right of first refusal, the OST would have had to send a written notice of its intent to do so and either assume the loan, paying the arrearages, or pay off the loan, by May 1, 2008.  Id.  OST did not exercise its right of first refusal.[4]

Following these events, Wells Fargo assigned the note and mortgage to HUD.  See Docket No. 20-7.  On behalf of HUD, the government now brings this action to foreclose the mortgage, sell the property, and collect any deficiency.  See Docket No. 20.  The government asserts the unpaid principal and interest as of June 2, 2008, was $69,887.89.  Id. at ¶15.  The government does not assert any personal claim against the OST.  Id. at  ¶22.

Borrowers, as noted above, never responded to the government's complaint and have failed to make an appearance of any kind in this action.[5]  The time for filing an answer has long since passed.  The government moved for entry of default against the borrowers.  See Docket No. 25.  The clerk has entered default.  See Docket No. 27.  The government now seeks entry of default judgment and a decree of sale.  See Docket No. 28.

---

[4] Had the OST opted to exercise its right of first refusal, the borrowers would have had 15 days from notice of OST's option to cure the default.  See Docket No. 20-9 at p.1.

[5] Both borrowers waived service of the summons and complaint in this matter.  See Docket Nos. 8 & 9.

**DISCUSSION**

**A.     Rule 55**

Federal Rule of Civil Procedure 55 describes a two-step process for securing a default judgment.  First, if a party has failed to plead or defend, the clerk must enter the party's default.  See FED. R. CIV. P. 55(a).  That step has concluded in this case.

Second, if the plaintiff's claim is for a sum certain the clerk, on the plaintiff's request, supported by an affidavit showing the amount, must enter judgment for the amount and costs against the defaulting defendant.  Id. at (b)(1).  In all other cases, the plaintiff must apply to the court for a default judgment.  Id. at (b)(2).  Under this provision, the court is authorized to conduct hearings, make referrals, or investigate in order to determine the amount of damages or establish the truth of any allegation.  Id.

**B.     Section 184 Loans**

Housing in Indian Country is an acute, chronic problem across the United States.  In addition, tribal trust land—land held by the government in trust for a tribe—is inalienable except by treaty.  See 25 U.S.C. § 177.  This poses obstacles to the development of housing on tribal lands or, more to the point, obtaining financing in order to conduct such development.

Congress granted to tribes and individual Native Americans the ability to lease their trust lands for up to 25 years with one renewal for a like term under the Long-Term Leasing Act of 1955.  See 25 U.S.C. § 415(a).  Such leases are subject to the approval of the Secretary of the Interior.  Id.

5

One way mortgage lending can be secured on trust property in Indian Country is though Section 184 of the Housing and Community Development Act of 1992 by which HUD provides loan guarantees.  See 12 U.S.C. § 1715z-13a.  Section 184 loans can be used to purchase or rehabilitate an existing house, purchase manufactured housing, or construct new housing.  See Pierson, Brian L., 19-Summer J. Affordable Housing & Community Dev. L. 367, 383 (Spring/Summer 2010) (hereinafter "Pierson").  The program can be used only for single-family housing on tribal trust land, allotted trust land or fee simple land in an Indian area.  Id.  The borrower may be a tribal member or the tribe itself.  Id.  The program is not limited to low- or moderate-income homebuyers.  Id.  However, borrowers must demonstrate that they lack access to the private financial markets.  See 62 Fed. Reg. 35, 718, 35, 748 (1997).

HUD charges a guarantee fee and the homebuyer must make a downpayment of 1.25 to 2.25 percent of the appraised value of the home or its cost.  Pierson, at 383.  When the home is located on fee land, the lender takes a standard mortgage.  Id.  When the home is located on trust land, the lender takes a mortgage on the borrower's leasehold.  Id.

In order to enable their tribal members to obtain Section 184 loans, tribes must enact procedures for eviction and foreclosure that allow lenders to foreclose in the event of default.  Id.  The lender under a Section 184 loan has the option of assigning the loan to HUD for the 100 percent guarantee of the loan after foreclosure proceedings.  See 12 U.S.C. § 1715z-13a(h)(1)(A); Ingram, John McGee, 7-Winter Journal of Affordable Housing & Community Dev. L.

164, 173 (Winter 1998) (hereinafter "Ingram").  However, the lender may also assign the loan to HUD after the occurrence of a 90-day default if HUD determines such assignment is "in the best interest of the United States."  Id.

If a borrower defaults on a Section 184 loan, the lender "or the Secretary [of HUD] shall only pursue liquidation after offering to transfer the account to an eligible tribal member, the tribe, **or** the Indian housing authority serving the tribe or tribes."  See 12 U.S.C. § 1715z-13a(h)(2) (emphasis added).  If the lender or HUD "subsequently proceeds to liquidate the account, the [lender] or the Secretary [of HUD] shall not sell, transfer, or otherwise dispose of or alienate the property except to" an eligible tribal member, the tribe, or the Indian housing authority serving the tribe.  Id.

**C.    OST's Objections to the Government Motion**

    **1.    Paragraph 7 of Government's Proposed Order--OST's Interest in the Land Should Not be Extinguished**

Paragraph 7 of the government's proposed order in connection with its motion would bar and foreclose from asserting any interest in the real property "all defendants, together with each and every person or entity claiming under them" and "any and all persons claiming to have acquired right, title or interest in and to the real property."  See Docket No. 28-1 at p. 4, ¶7.  This language would, of necessity, include the OST, a "defendant" herein and also potentially "any and all persons."  The OST objects because the land in question is held by the government in trust for the OST.  Nothing about this foreclosure action should affect OST's trust interest in the land.

In its reply brief, the government agrees with OST's contention. It affirms that it only intended to extinguish any existing liens or encumbrances on the leasehold while not affecting the ultimate title of the property that remains held in trust by the government for the benefit of the OST. Accordingly, the court will instruct the government to propose a new order with reformed language in paragraph 7 indicating its true intent.

In addition, the OST argues in its sur-reply brief that it objects to the government's foreclosure of the OST's interest in the leasehold. The OST cites to no legal authority for its position other than the statute. The OST also asserts it has the right, under the mortgage, to reject any purchaser of the leasehold interest except HUD. The OST does not explain how this fact—indeed true—prohibits HUD from foreclosing on the leasehold. The OST's interest in the leasehold is that of lessor. OST's position as lessor is an interest gained by virtue of its position as the beneficiary of the trust land. As stated above, that cannot be and is not intended to be changed by the government's foreclosure. The OST has not stated any grounds to deny the government's motion.

2.   **Paragraph 6--HUD is Not an Authorized Purchaser**

Paragraph 6 of the government's proposed order would allow HUD to bid on the property being foreclosed at the sale of said property. It would also allow HUD to bid less than the amount of the debt owed by the borrowers so long as HUD bid fairly and in good faith and bids the reasonable value of the property. See Docket No. 28-1 at pp. 3-4, ¶6. The OST objects to this

8

paragraph, asserting that Section 184 does not authorize HUD to purchase the property at a foreclosure sale.  Instead, the OST argues that Section 184 permits only tribal members, the tribe, or the Indian housing authority serving the tribe to purchase the property at a foreclosure sale.

The government responds that the Section 184 rider to the borrowers' mortgage in this case and the lease agreement between the OST and the borrowers clearly contemplate that HUD may take *temporary* title to the leasehold following a foreclosure sale.  The government represents that it would hold such title only until any applicable redemption period expired.  After that, HUD would then tranfer the leasehold interest to a tribal member, the OST, or the OST housing authority as contemplated by Section 184.

The language from the OST lease to the borrowers in this case provides in pertinent part:

> Lessee may assign the lease . . . to the lender, . . . or . . . HUD . . . if Lessee defaults in any mortgage. . .  in such event, . . . HUD in turn may transfer this lease, . . . to a successor Lessee

See Docket No. 20-5 at p.3, ¶11.

This paragraph contemplates that where the lease is in default, borrowers as a self-help mechanism can assign their leasehold interest in the property to HUD and then HUD can transfer the lease to a tribal member, the OST or the tribal housing authority.  The government argues that, if such a sequence is allowed and specifically contemplated by the lease under circumstances where the borrower acts voluntarily, HUD must also be able to take temporary title to the leasehold interest involuntarily through foreclosure

proceedings. Otherwise, argues the government, HUD would be left without a remedy.

In addition, the government relies on the Section 184 rider to the mortgage in this case which, in a foreclosure action such as this, vests the federal district court with "jurisdiction to convey to the Secretary [of HUD] the remaining life of a lease on the property and to order eviction of the delinquent Borrower." See Docket No. 20-2 at p. 8, ¶B.

The court agrees with the government. The lease agreement and the mortgage rider clearly contemplate that HUD can bid on and, if it is the high bidder, take *temporary* title to the property at a foreclosure sale. That is not what paragraph 6 of the government's proposed order states, however. The language of paragraph 6 should be reformed to reflect that HUD may bid on the property at the foreclosure sale and, if it is the high bidder, it may take temporary assignment of the leasehold interest to be held until any applicable redemption period expires, after which HUD shall transfer the leasehold interest to a qualifying tribal member, the OST or the tribal housing authority.

The OST objects in its sur-reply that this process may result in HUD holding the leasehold for an extended period of time. That can be easily remedied. The lease itself provides for a 15-day period for the borrowers to redeem. See Docket No. 20-5 at p.3, ¶12. South Dakota law also provides a 15-day redemption period in favor of the owner after the expiration of any other rights to redeem vested in persons other than the owner. See SDCL § 21-52-7. The term of the lease is 25 years plus an automatic renewal term of 25 years.

See Docket No. 20-5 at p. 1, ¶4.  The lease began upon the approval of the lease by the Secretary, which occurred December 10, 1999.  Id. at pp. 4-5.  Therefore, the court can order a specified period of redemption—15 days—and then specify a set period—180 days is one example—during which HUD must transfer the leasehold to an eligible tribal member, the OST or the OST housing authority.

In regard to paragraph 6 of the government's proposed order, the court notes that the OST does not dispute the government's appraisal of the property establishing a fair market value of the remaining leasehold interest to be $48,356.  Therefore, the government's request that the court acknowledge a bid in that amount by HUD at the foreclosure sale would represent a fair and good faith offer appears well founded.

### 3. HUD Has Not Satisfied Jurisdictional Prerequisites

Finally, the OST asserts a series of factual arguments from paragraph 3 of the affirmative defenses listed in its answer to the government's amended complaint as an obstacle to the government's motion for default judgment and decree of sale.  The OST recognizes that these arguments were previously rejected by the District of South Dakota in United States v. Big Crow, 2016 WL 884901 (D.S.D., Mar. 2, 2016) but it wishes to preserve its record by making the objections.

#### a. Objections to the Notice of Right of First Refusal

In paragraph 3 of its answer, the OST asserted that there are jurisdictional prerequisites the government failed to satisfy prior to bringing

this foreclosure action.  See Docket No. 22 at pp. 2-5, ¶3.  Many of these objections are centered on Section 184's requirement of offering a right of first refusal before foreclosing.  Because the language is so crucial to evaluating OST's argument, the court reproduces that portion of the statute below:

> In the event of a default by the borrower on a loan guaranteed under this section involving a security interest in restricted Indian land, the mortgagee or the Secretary shall only pursue liquidation after offering to transfer the account to an eligible tribal member, the tribe, or the Indian housing authority serving the tribe or tribes.  If the mortgagee or the Secretary subsequently proceeds to liquidate the account, the mortgagee or the Secretary shall not sell, transfer, or otherwise dispose of or alienate the property except to one of the entities described in the preceding sentence.

See 12 U.S.C. § 1715z-13a(h)(2).

The OST argues that Section 184 requires *HUD*—and only HUD--to offer to transfer the borrowers' leasehold interest to another tribal member, to the OST or to the tribal housing authority before bringing this action.  Here, the offer of the right of first refusal was extended by Wells Fargo, not HUD.

OST's argument ignores the plain language of the statute:  the statute allows "the mortgagee **or** the Secretary [of HUD]" to pursue liquidation after offering a right of first refusal to cure the default to an eligible tribal member, the OST, or the tribal housing authority.  See 12 U.S.C. § 1715z-13a(h)(2). Here, Wells Fargo, the mortgagee, offered the OST a right of first refusal—a fact the OST does not dispute.  Because the statute allows *either* the mortgagee *or* HUD to offer the right of first refusal, that precondition was satisfied.  Id.

The OST also takes issue with the fact that the right of first refusal was sent *before* Wells Fargo assigned its interests in the note and mortgage to HUD.

12

The OST does not explain why this is significant.[6]  If OST's point is that HUD must be the one to offer the tribe a right of first refusal, that argument is discussed and rejected above.

The OST asserts the notice of the right of refusal was also defective because it was issued pursuant to the borrowers' lease, not pursuant to Section 184.  Essentially, the OST is arguing that the bank's notice to the OST must contain a reference to Section 184 and, because it only referenced the borrowers' lease, the notice was defective.  The court rejects this argument.  Nothing in section (h)(2) requires that the mortgagee or HUD make reference to Section 184 when it issues a notice of a right of first refusal.  See 12 U.S.C. § 1715z-13a(h)(2).  The notice must, of course, identify the leasehold as to which the right of first refusal is being offered.  Here, Wells Fargo's notice adequately identified the leasehold interest at issue.  See Docket No. 20-9.

The OST argues the notice was defective because, although Wells Fargo offered OST a right of first refusal, Wells Fargo did not *also* offer such a right to a tribal member *and* the OST housing authority.  This argument is defeated by the statutory language.  Section 184 only requires that the mortgagee or HUD make an offer of first refusal to *one* of the three named entities.  The statute is written in the disjunctive, using the conjunction "or"—tribal member, tribe **or** tribal housing authority.  See 12 U.S.C. § 1715z-13a(h)(2).  Thus, the statute is

---

[6] These arguments are merely stated in OST's answer.  See Docket No. 22.  The OST's brief in response to the government's motion for default judgment and decree of sale merely incorporates the answer by reference.  See Docket No. 35 at p.5, ¶17.  The OST cites to no legal authority and provides no analysis.  Id.

satisfied when a right of first refusal is offered to any one of the three entities. Wells Fargo satisfied the condition by offering the right to OST.

The OST argues the notice of right of first refusal was defective in that the lease allowed the OST 30 days to decide whether to exercise the right whereas the Wells Fargo notice gave OST only 28 days. This is true. Compare Docket No. 20-5 at p. 3, ¶12 (lease, 30 days), with Docket No. 20-9 (notice, 28 days). Nevertheless, it is a distinction without any relevancy. Wells Fargo did not transfer the loan to HUD until eight and one-half months after the deadline on the notice of right of first refusal. See Docket No. 20-7 (January, 2009). OST never alleges it attempted to exercise its right of first refusal within the 30 days allowed--or at any time. The government alleges via verified complaint that OST never sought to exercise the right, a fact never disputed by the OST.

Finally, the OST argues the notice of right of first refusal was defective because (1) it required OST to bring the arrearages current and assume the loan (or pay the loan off entirely) in order to exercise the right, (2) it gave the OST an unreasonably short period of time to do so, and (3) the right was made subject to a right by the borrowers to redeem the loan and cancel the right of first refusal if borrowers could repay the arrearages within 15 days after the OST brought the loan current. Each of these conditions which OST complains about is established as a rule by the instruments themselves.

The lease established the 30-day right of first refusal in favor of OST and the fact that OST would have to bring the arrearages current or pay off the loan entirely in order to exercise the right. See Docket No. 20-5 at p.3, ¶12. The

14

15-day redemption period in favor of the borrowers was also provided by the terms of the lease.  Id.  The OST was a signatory to the lease via its Chairman and the Director of the OST Land Office.  Id. at p. 4.  In addition, the lease was approved by the BIA.  Id.  The notice was not defective—it merely reflected the terms of the lease the OST was bound by.

### b.     Objections to the Notice of Default to Borrowers

The OST also takes issue with the notice of default that Wells Fargo issued to the borrowers notifying them that they were in default on their loan, telling them the amount of the arrearage on the loan, and giving them a deadline to bring their loan current.  The OST argues that the notice is defective because it was addressed to only one of the borrowers, not both of them.  This is true—Dorothy is named on the internal address block of the letter, but not Francis.  See Docket No. 20-8.  The OST also seems to assert that the mailing address for the notice was required to be the address of the loan property rather than the Post Office Box used by Wells Fargo.  The court notes OST never disputes that the P.O. Box was an incorrect mailing address for borrowers.  In the court's experience, many individuals on the Pine Ridge Indian Reservation receive mail via a P.O. Box and do not receive mail delivery at their dwelling.  In any event, lack of notice is an issue that the borrowers could raise.  OST lacks standing to raise the issue.

### c.     Big Crow is Binding Precedent

All of OST's arguments discussed above were previously raised and rejected in an earlier case decided in this district, United States v. Big Crow,

2016 WL 884901 (D.S.D., Mar. 2, 2016). Judge Piersol concluded in Big Crow that the prerequisites under Section 184 while mandatory, were not jurisdictional. Id. at *2. The court then rejected OST's arguments that the notice of right of first refusal had to be issued by HUD and only HUD. Id. at *3. The court also rejected OST's argument that the right of first refusal could only be satisfied by offering it to tribal members, the tribe, *and* the tribal housing authority. Id. The court noted that the statute plainly uses the term "or," meaning the mortgagee or HUD satisfies the condition precedent if the right of first refusal is offered to any *one* of the three named entities. Id. This court finds Big Crow to be binding precedent as to the OST's arguments in this case.

In its sur-reply, the OST states regarding its affirmative defenses that it is entitled to be heard on these defenses before the court grants the government's motion. But that is exactly what has happened. The OST has had the opportunity to submit a brief in opposition to the government's motion and, at the court's invitation, to submit a second sur-reply brief. The OST has been given notice and an opportunity to be heard, to make its case. There is no lack of procedure here that prevents granting the government's motion.

**D.  Proposed Order**

In addition to the revisions discussed above, there is one other revision to the government's proposed order that must be made. The government's complaint and its proposed order appear to recite an incorrect legal description for the property at issue in this case. The lease recites a legal description consistent with the description the court has reproduced above at page two of

16

this opinion.  See Docket No. 20-5 at p.1.  Both the lease and the mortgage legal descriptions identify this property as being located at "Block 30."  See Docket No. 20-2 at p. 1; Docket No. 20-5 at p. 1.

The government's amended complaint instead recites a legal description of property located at "Block 36."  See Docket No. 22 at p. 3, ¶8.  This apparent error is reproduced in the proposed order the government submitted for the court's signature, which also recites "Block 36."  See Docket No. 28-1 at p. 2, ¶2.

In addition, when the court compared the legal descriptions from the lease and from the mortgage, it discovered a variance there as well.  After reciting the lot and block numbers, both legal descriptions have a series of four groupings of acreage descriptions.  The fourth and final such grouping of acreage descriptions is different in the two instruments.

| **The Mortgage** | **The Lease** |
|---|---|
| E¼SW¼SE¼SW¼ | E¼NW¼SE¼SW¼ |

The court has no way of knowing whether the mortgage has the correct legal description or whether the lease does—or neither.  It is imperative in transactions and court documents concerning real property that accurate legal descriptions be used by all parties.

The government, when redrafting the proposed order in accordance with this opinion, should take steps to (1) verify the correct legal description of the property at issue and (2) make sure that the verified legal description is accurately reproduced in the proposed order.

17

**CONCLUSION**

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that the government's motion for default judgment and decree of sale [Docket No. 28] be denied in its entirety, without prejudice to the government's ability to reassert the same motion once the issues listed below are addressed.

The government is entitled to default judgment and a decree of sale, but the order the government proposed to effectuate that relief must be revised in important ways as follows:

1. Paragraph 6 should be revised to reflect that if HUD is the successful purchaser at the foreclosure sale, HUD will take temporary title only until any redemption period expires after which HUD will transfer the remaining leasehold interest within a specified period of time to an eligible tribal member, the OST, or the OST housing authority.

2. Paragraph 7 should be revised to reflect that the foreclosure and sale will not affect in any way the title to the property which is held by the United States for the benefit of OST.

3. The legal description should be corrected to conform to the correct and accurate legal title documents for this property.

The court encourages the government and the OST to work together to arrive at language in the proposed order that is acceptable to both parties if possible.

**NOTICE OF RIGHT TO APPEAL**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. See Fed. R. Civ. P. 72;

28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED November 7, 2019.

BY THE COURT:

*/s/ Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge